UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

THE AUTOMOBILE INSURANCE COMPANY OF
HARTFORD, CONNECTICUT a/s/o Leandra Gargiulo,

                        Plaintiff,                        **OPINION AND ORDER**

              - against -                        No. 10-CV-0011 (CS)

ELECTROLUX HOME PRODUCTS, INC.,

                        Defendant.
------------------------------------------------------------------x

Appearances:
Craig A. Raabe
Jeffrey J. White
Laura A. Torchio
Robinson & Cole LLP
Hartford, Connecticut
*Counsel for Plaintiff*

Cheryl M. Nicolson
Melissa L. Yemma
Nicolson Law Group LLC
Media, Pennsylvania
*Counsel for Respondent*

Seibel, J.

      Before the Court are Defendant's Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure, (Doc. 89), and Defendant's Motion to Preclude Testimony of Plaintiff's Expert David E. Beauregard, (Doc. 87).

1

## I. BACKGROUND

This case arises out of a January 17, 2007 fire in the home of Leandra Gargiulo. (D's 56.1 ¶¶ 1-2.)[1] Following the fire, Gargiulo made a claim with Plaintiff, her insurance company, which ultimately compensated her for the fire damage. (*Id.* ¶ 3.) Plaintiff commenced this action on January 4, 2010, alleging that the fire was caused by a defectively and/or negligently designed clothes dryer manufactured by Defendant. (Doc. 1.)

Since then, the parties have engaged in a lengthy and contentious discovery period. After the close of discovery, I held a pre-motion conference on January 24, 2012, at which I granted Defendant leave to file the instant Motions.

## II. DISCUSSION

### A. Defendant's Summary Judgment Motion

In response to my October 26, 2012 Sealing Order, (Doc. 95), Defendant, by letter dated December 11, 2012, withdrew its Motion for Summary Judgment, (Doc. 103). Based on Defendant's voluntary withdrawal, Defendant's Motion for Summary Judgment is hereby DENIED as moot.

---

[1] "D's 56.1" refers to Defendant's "Statement of Material Facts in Support of Motion of Defendant, Electrolux Home Products, Inc., for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure." (Doc. 90.) I refer only to D's 56.1 where the material fact has been admitted. *See* Local Civ. R. 56.1(a).

Counsel for Defendant has failed to abide by Local Civil Rule 56.1(a), which requires that the statement of material facts be "short and concise." D's 56.1 contains numerous paragraphs that contain multiple sentences and/or argument both of which are inappropriate in what is supposed to be a statement of facts. (*See, e.g.*, D's 56.1 ¶¶ 1, 9, 10, 20.) Indeed, D's 56.1 is essentially a verbatim copy of pages 1-10 of Defendant's opening brief, broken up into numbered statements. This is hardly "short and concise," and flies in the face of the purpose of Local Civil Rule 56.1, which is to focus the factual issues (or lack thereof) for me. Furthermore, it makes opposing counsel's task in responding all the more difficult. In the future, I expect counsel to comply with both the letter and the spirit of the Local Rules.

Counsel for Plaintiff has failed to abide by my Individual Practices, which require that a party opposing summary judgment reproduce each entry in the moving party's Local Rule 56.1 Statement and set out the opposing party's response directly beneath it. In the future, I expect counsel to comply with my Individual Practices.

2

B.  Defendant's Motion to Preclude Expert Testimony

Defendant moves to preclude the testimony of Plaintiff's expert, David E. Beauregard, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). (Doc. 87.) Defendant concedes for the purposes of its Motion that Beauregard is qualified to offer expert testimony on the topic of product design defect. (D's Daubert Mem. 6 n.1.)[2] Defendant challenges Beauregard's opinions regarding design defect as not based upon sufficient facts and data and not the product of reliable methodology. (*Id.* at 8-15.) Defendant also challenges Beauregard's opinions regarding feasible alternative design as not the product of reliable methodology. (*Id.* at 15-17.)

a.  Legal Standard

The admissibility of expert testimony is governed principally by Rule 702, which represents a more liberal standard of admissibility for expert opinions, as compared to the previous, more rigid standard set out in *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir. 1923). *See, e.g., Daubert*, 509 U.S. at 588-89 (1993) ("austere" *Frye* test of general acceptance in the scientific community is "absent from, and incompatible with, the Federal Rules of Evidence" and their "permissive backdrop"). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. Despite the liberal standard, however, a district court still "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert* requires district courts to fulfill the

---

[2] "D's Daubert Mem." refers to "Defendant, Electrolux Home Products, Inc.'s Memorandum of Law in Support of Motion to Preclude Testimony of Plaintiff's Expert David E. Beauregard." (Doc. 88.)

3

"gatekeeping" function of "mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.").

*Daubert* enumerated a list of factors that, while not constituting a "definitive checklist or test," a district court might consider in evaluating whether a proffered expert opinion has the required indicia of scientific reliability: whether a theory or technique could be and had been tested, whether it had been subjected to peer review, what its error rate was, and its degree of acceptance within the relevant scientific community. *See Daubert*, 509 U.S. at 593-94. In addition to setting forth these criteria for testing an expert's methodology, Rule 702 also requires a sufficiently rigorous analytical connection between that methodology and the expert's conclusions. "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *see Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").

A district court's gatekeeping function applies not only to scientific opinion, but also to the opinions of other experts such as engineers, as here. *See Kumho*, 526 U.S. at 141. The *Daubert* factors, however, "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id.* at 150 (internal quotation marks omitted). Indeed, expert testimony may be based on "experience

4

alone – or experience in conjunction with other knowledge, skill, training or education." Fed. R. Evid. 702 advisory committee's note. "In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Id.*; *see also Kumho*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). In all cases, "the test of reliability is 'flexible,'" and a district court has "the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho*, 526 U.S. at 141-42 (emphasis in original).

### b. Beauregard's Design Defect Opinions

Beauregard opines that the design of the dryer leads to accumulation of lint near the gas burner. (Expert Report 12-13.)[3] Defendant argues that Beauregard has insufficient facts and data to support this opinion, specifically pointing to Beauregard's observation of lint accumulation in 41 dryers – all of which were involved in fires – "against a backdrop of an estimated 8,825,513 Electrolux dryers in use in the United States on a yearly basis," and "absent complete facts as to their maintenance, installation, service or usage." (D's Daubert Mem. 9-10). But this is hardly an insufficient basis from which a concededly-qualified expert can render an opinion about the situs of lint accumulation. Defendant does not argue that the 41 dryers surveyed are any different from the other Electrolux dryers on the market. That there might be some sample bias in examining the location of lint accumulation only in dryers involved in fires does not render the opinion so unreliable as to be excluded entirely. *See Kumho*, 526 U.S. at 156; *see also Amorgianos*, 303 F.3d at 167 ("A minor flaw in an expert's reasoning or a slight

---

[3] "Expert Report" refers to a document entitled "Forensic Investigation of Property Loss – 3 Thomas Place, Bronxville, NY," dated September 14, 2011 and authored by David E. Beauregard. (D's Daubert Mem. Ex. A.)

5

modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible."). Potential sample bias is a subject for cross-examination, and goes to the weight, not the admissibility, of the expert testimony. Indeed, the reliability of Beauregard's opinion is straightforwardly testable; if it is incorrect, Defendant could disprove it by testing dryers not involved in fires and showing that lint does not accumulate near the gas burner. Furthermore, Beauregard's examination of the 41 dryers is hardly the sole basis for his opinions; he cites numerous studies and tests. For example, Defendant does not challenge Beauregard's June 22, 2010 "Demonstration of Lint Migration and Accumulation in Electrolux Clothes Dryers" study[4] – cited in support of Beauregard's opinion that "lint will readily deposit in the heater pan, *even under conditions that meet the Electrolux recommendations*," (Expert Report 16 (emphasis in original)) – which presumably examined dryers *not* involved in fires. Thus, I find there to be sufficient facts and data for Beauregard to opine about the situs of lint accumulation in Electrolux dryers.[5]

Defendant also argues that Beauregard "cannot produce reliable testing to demonstrate, to a reasonable degree of scientific certainty, lint accumulation in the heater pan, ignition of that lint accumulation by the gas burner flame, and generation of flame and airborne embers providing a mechanism for fire spread." (D's Daubert Mem. 12 (citing Expert Report 11).) Defendant points to Beauregard's October 2010 "Trial 4" and cites several portions of his deposition testimony in arguing that Beauregard "has failed to show that there was sufficient lint

---

[4] A copy of this study was neither attached to the Expert Report nor provided with any motion papers.

[5] Defendant also cites page 14 of the Expert Report as containing an "opinion as to the quantification of lint." (D's Daubert Mem. 11.) As Plaintiff points out, there is no such lint quantification theory; Beauregard's opinion appears to be a lint *location* theory. (*See* Plaintiff, the Automobile Insurance Company of Hartford Connecticut a/s/o Leandra Gargiulo's Memorandum of Law in Opposition to Defendant's Motion to Preclude Plaintiff's Expert David E. Beauregard ("P's Daubert Mem."), (Doc. 98), 7.)

6

accumulation in the heater pan for ignition by the burner flame." (*Id.* at 12-13.) Defendant also points to Beauregard's April 2009 "Lint Ignition Testing in Electrolux Gas Clothes Dryers" study and argues that it does not constitute "testing to support the next step in his causation sequence that the burner flame will ignite lint accumulated at the 6 o'clock position in a properly maintained and operating dryer." (*Id.* at 13-14.) Defendant concludes that these failings "render[] Mr. Beauregard's entire product defect opinion subjective, conclusory and unreliable." (*Id.* at 15.)

As mentioned above, Beauregard conducted testing (*i.e.*, the June 22, 2010 "Demonstration of Lint Migration and Accumulation in Electrolux Clothes Dryers" study) which could support his opinion that lint will deposit in the heater pan under normal operating conditions. (*See* Expert Report 16.) Defendant's argument that the testing was not conducted under normal operating conditions, (*see* D's Daubert Mem. 13), goes to the weight of the expert's opinion, not its admissibility. *See Amorgianos*, 303 F.3d at 267.

Similarly, the challenges to the April 2009 "Lint Ignition Testing in Electrolux Gas Clothes Dryers" study[6] – that the conditions were not those of a "properly maintained and operating dryer," (D's Daubert Mem. 14) – likewise go only to the weight, not the admissibility, of the opinion. Defendant's citation to *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631 (Tex. 2009), decided under the Texas Rules of Evidence, is of little help in evaluating a different expert opinion under the Federal Rules of Evidence.

Beauregard is concededly qualified for the purposes of the instant Motion. (D's Daubert Mem. 6 n.1.) His qualifications, as were those of the expert in *Kumho*, are presumably based at least in large part on his experience. (*See* Expert Report 3-6 (listing numerous dryer studies

---

[6] Again, a copy of this study was neither attached to the Expert Report nor provided with any motion papers.

7

conducted by Beauregard).) Though he has conducted testing under conditions which Defendant challenges, his opinions are far from the "junk science" that ought to be excluded under Rule 702. *Joiner*, 522 U.S. at 153. Under the flexible *Daubert* analysis, which acknowledges that its factors may not apply where, as here, the expert is an engineer whose analysis involves personal knowledge and experience, *see Kumho*, 526 U.S. at 150, Beauregard's opinion is hardly "speculative or conjectural or . . . based on assumptions so unrealistic and contradictory as to suggest bad faith." *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 353 (S.D.N.Y. 2003) (internal quotation marks omitted). Accordingly, Defendant's Motion to Preclude Beauregard's testimony regarding design defect is denied.

    c. <u>Beauregard's Feasible Alternative Design Opinions</u>

There can be no argument that the alternative design proposed by Beauregard is not feasible – indeed, other dryer manufacturers have employed it for decades – but Defendant argues that Beauregard's opinion that reasonable alternatives would have prevented the dryer fire is "wholly speculative." (D's Daubert Mem. 15.) Specifically, Defendant argues that Beauregard's bases for his conclusion – namely, an inspection of 23 Whirlpool and Maytag dryers having the alternative design that were involved in fires and the finding that none of the fires were caused by the same failure mode (lint accumulation near the heat source) as the Gargiulo dryer – is insufficient as it examined a small number of Whirlpool and Maytag dryers compared to the total number on the market and the conclusion involves "an unsupported leap." (*Id.* at 17.)

For the same reasons as discussed above, I find Beauregard's opinion regarding reasonable design alternatives to be sufficiently reliable to pass muster at this stage. The examination of 23 dryers is hardly the only basis for Beauregard's conclusion. Indeed, it seems

8

designed more to confirm his conclusion by ruling out the possibility of lint accumulation causing fires on those models.[7] The Expert Report explains the design differences between the Whirlpool dryer, which was also on the market, and the Electrolux dryer at issue, and why the design of the former avoids the hazard that caused the Gargiulo fire – essentially, because lint will not accumulate near the gas burner flame. (Expert Report 18.)[8] Furthermore, Beauregard's opinion is straightforwardly testable; Defendant can disprove it through its own investigation or testing. Accordingly, Defendant's Motion to Preclude Beauregard's testimony as to a feasible alternative design is denied.

\*   \*   \*

For essentially the reasons stated by Plaintiff, Beauregard's opinions in this case are based on sufficient data, are sufficiently reliable, employ a methodology appropriate to the expert's field, and will be helpful to the jury. This is not a situation in which the opinion is connected to the data only by the expert's say-so. *See Joiner*, 522 U.S. at 146.

C.     Unsealing Order

In response to my October 26, 2012 Sealing Order, (Doc. 95), Defendant withdrew its Motion for Summary Judgment, and requested either that the redacted version of Plaintiff's Opposition remain on the docket or that both Defendant's and Plaintiff's Summary Judgment papers be stricken, (Doc. 103). With respect to its Motion to Preclude, Defendant agreed to withdraw the confidential designation as to Exhibits E, F, G, H, and I to Plaintiff's Opposition.

---

[7] To the extent there is any sample bias in the analysis of the 23 Whirlpool and Maytag dryers, as above, that goes to the weight, not the admissibility, of the expert testimony.

[8] That the alternative design avoids the accumulation of lint near an ignition source is surely something an engineer can conclude based on observation and experience. To the extent Defendant objects to the conclusion that such a design would have avoided the fire in this case, its argument amounts to a rehashing of its objection – rejected above – to the expert's opinion that such an accumulation caused the Gargiulo fire.

(*Id.*) Plaintiff does not oppose the unsealing of any of its papers. (Doc. 104.) Accordingly, I hereby order Plaintiff to electronically file with the Court an unredacted version of its Opposition to Defendant's Motion to Preclude, including all exhibits.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED and Defendant's Motion to Preclude is DENIED. The Clerk of the Court is respectfully directed to terminate the pending motions, (Docs. 87, 89), and unseal Plaintiff's oppositions to same, (Doc. 99). The parties are ordered to appear for a status conference on **January 9, 2013** at **2:15 p.m.**

**SO ORDERED.**

Dated: December 20, 2012
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.